UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENNIS WALSH, et. al,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MICROSOFT CORPORATION,<br><br>　　　　Defendant. | CASE NO. C14-424-MJP<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

This matter comes before the Court on the motion of Microsoft Corporation to compel Plaintiff Dezra Guthrie to arbitrate her claims. (Dkt. No. 43.) Having reviewed the motion, Ms. Guthrie's response (Dkt. No. 48), the reply (Dkt. No. 50), and all related papers, the Court GRANTS the motion.

**Background**

This case concerns Xbox LIVE, an online service provided by Defendant Microsoft, which allows, among other things, users to play online games using the Xbox console. Plaintiffs—Dennis Walsh, Dezra Guthrie, Katherine Ortiz, Frank Ortega, Leslie Sweeney-Fagan, and John Sweeney—are former Xbox LIVE Service subscribers who claim Defendant Microsoft

Corporation charged their credit cards without their authorization. (Dkt. No. 11.) They bring this putative class action to recover for those alleged unauthorized charges. (Dkt. No. 11 at 41.) Microsoft moves to compel arbitration of Ms. Guthrie's claims on the grounds the Terms of Use (TOUs) require her to arbitrate this dispute. (Dkt. No. 48.)

      A. Xbox LIVE Service Membership and Terms of Use

Microsoft Xbox LIVE offers two types of membership accounts: (1) Xbox LIVE Silver, a free account; and (2) Xbox LIVE Gold, a paid account providing subscribers with additional features and services. (Dkt. No. 44 at 2.) If a Gold account expires or a subscriber fails to pay, the account is automatically converted to an Xbox LIVE Silver account. (Id. at 3.) All subscribers regardless of the kind of account must agree to the Xbox LIVE Terms of Use ("TOUs"). (Dkt. No. 44 at 3.)

In October 2012, Microsoft revised the Xbox LIVE TOUs. (Dkt. No. 44-1 at 2.) The first sentence of 2012 TOUs states: "If you live in the United States, section 4 contains a binding arbitration clause and class action waiver. It affects your rights about how to resolve any dispute with Microsoft. Please read it." (Id. at 2.) Indeed, the section 4 arbitration and class action waiver provision required:

> If you and Microsoft do not resolve any dispute by informal negotiation or in small claims court, any effort to resolve the dispute will be conducted by binding arbitration. You are giving up the right to litigate (or participate as a party or class member) all disputes in court before a judge or jury.

(Id. at 10) The October 2012 TOUs also contained a class action waiver:

> 4.4. CLASS ACTION WAIVER. Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis. Neither you nor Microsoft will seek to have any dispute heard as a class action, private attorney general action, or in any other proceeding in which either party acts or proposes to act in a representative capacity. No arbitration or proceeding will be combined with another without the prior written consent of all parties to all affected arbitrations or proceedings.

(Id. at 11.)

The October 2012 TOUs broadly defined the term "dispute":

> Dispute means any dispute, action, or other controversy between you and Microsoft concerning the Services (including their price) or this agreement, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis. "Dispute" will be given the broadest possible meaning allowable under law.

(Id. at 10). The only claims excluded from the arbitration provision are "DISPUTES RELATING TO THE ENFORCEMENT OR VALIDITY" of the subscriber's, Microsoft's, or either of their licensors' intellectual property rights. (Id.)

The October 2012 TOUs are presented to users as a "click-wrap agreement." Microsoft represents that subscribers are provided with an opportunity to review the Xbox LIVE TOUs before deciding whether to accept the terms. (Dkt. No. 44 at 2.) If a user decides to accept the terms of the Xbox Live TOUs while using their Xbox consoles they click "Accept" on a screen that displays the Xbox Live TOUs. (Id. at 3.) If a subscriber clicks "Decline" or fails to click "Accept" or "Decline," the subscription is not processed and access to Xbox Live is not enabled. (Id.) If the subscriber is accessing the services online, they are presented with the TOUs and a screen and box stating "I accept the Xbox LIVE Terms of Use Agreement," "I accept," or "Cancel." If the latter is clicked the services are not enabled. (Id.)

B. Plaintiff Ms. Guthrie's Account

Ms. Guthrie subscribed to Xbox LIVE's Gold services. (Dkt. No. 44 at 2.) It converted to a Silver account for non-payment. (Id.) Microsoft records show she last signed into her account on November 5, 2012. (Id.) On that date Ms. Guthrie was presented with the new October TOUs and accepted them by clicking an "I accept" or "I accept the Terms of the Use agreement." (Id. at 3.)

C. Procedural Posture

This case originated in the Southern District of Texas. Microsoft moved to dismiss or in the alternative transfer the case to this District based on the TOUs in place before October 2012. (Dkt. No. 15.) The court agreed, finding under the TOUs venue was appropriate in the federal court in King County, Washington. (Dkt. No. 28 at 5.)

Microsoft now moves to compel Ms. Guthrie's claims to arbitration on the grounds arbitration is mandated by the October 2012 TOUs, which she accepted in November 2012. Ms. Guthrie counters that Microsoft cannot invoke the arbitration provision because (1) it failed to follow certain procedural requirements in the TOUs, and (2) the arbitration provision is unconscionable and/or illusory. (Dkt. No. 48.)

**Discussion**

Under the Federal Arbitration Act, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted). If the answer to both questions is 'yes,' then "the Act requires the court to enforce the arbitration agreement in accordance with its terms." Id. By its own terms, the Act "leaves no place for the exercise of discretion by a district court," instead it mandates "that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id. (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)) (emphasis in original). In the Ninth Circuit, "the most minimal indication of the parties' intent to arbitrate must be given full effect ..." Rep. of Nicaragua v. Std. Fruit Co., 937 F.3d 469, 478 (9th Cir. 1991) (citations omitted).

However, "the party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party." Glow v. Cent. Pac.

1  Mort. Corp., 560 F.Supp.2d 972, 978 (E.D.Cal. 2008). "This burden is a substantial one[.]" Id.
2  at 979. "Before a party to a lawsuit can be ordered to arbitrate ..., there should be an express,
3  unequivocal agreement to that effect ... The district court ... should give to the opposing party the
4  benefit of all reasonable doubts and inferences that may arise." Three Valleys Mun. Water Dist.
5  v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991))

6        The Court finds Ms. Guthrie agreed to arbitrate her claims when she accepted the
7  October 2012 TOUs. As a starting point, per the terms of the TOUs, this Court applies Oregon
8  law—Ms. Guthrie's home state—to determine whether a valid arbitration agreement exists.
9  (Dkt. No. 11 at 7.) Online agreements are enforceable under Oregon law if a consumer has an
10 opportunity to review the terms of the agreement and manifested assent to its terms. Beard v.
11 PayPal, Inc., 2010 WL 654390, at *1 (D.Or. Feb. 19, 2010)(enforcing online "clickwrap
12 agreement" where plaintiffs had access to the entire User Agreement on defendant's website and
13 checked box indicating they had read and agreed to it.) Here, Ms. Guthrie agreed to a clickwrap
14 agreement when she logged into her Xbox LIVE account on November 5, 2012, was presented
15 with the TOUs, and accepted them by clicking on the box to indicate her agreement. (Dkt. No.
16 44.) Although Ms. Guthrie does not deny she assented to the provision, she argues that
17 Microsoft must provide the IP address or other information to "prove" she accessed her account
18 in November 2012. (Dkt. No. 48 at 14.) The record before the Court does just that: Microsoft's
19 database confirms Ms. Guthrie's access of her account and assent to the TOUs. The Court finds
20 an unmistakable and clear agreement to arbitrate.

21       Next, the Court finds this dispute falls within the arbitration provision. It is well
22 established "that where the contract contains an arbitration clause, there is a presumption of
23 arbitrability," particularly where the clause is broad. AT & T Techs., Inc. v. Commc'ns Workers
24

of Am., 475 U.S. 643, 650 (1986). Indeed, "doubts should be resolved in favor of coverage." Id. (internal quotations omitted). Here the arbitration provision covers "any dispute, action, or other controversy between you and Microsoft concerning the Services (including their price) or this agreement, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis." Ms. Guthrie's claims directly relate to the Xbox LIVE's contract and services as she alleges Microsoft charged her credit card without authorization. The Court finds the dispute falls within the broad "dispute" provision of the agreement.

Notwithstanding her agreement to arbitrate these claims, Ms. Guthrie argues Microsoft cannot invoke the arbitration clause because it did not follow certain procedural requirements. First, she argues Microsoft was required to send her a "notice of dispute." (Dkt. No. 48 at 8.) The dispute resolution process in the TOUs requires:

> In the event of a dispute, you or Microsoft must give the other a Notice of Dispute, which is a written statement that sets forth the name, address and contact information of the party giving it, the facts giving rise to the dispute, and the relief requested. You must send any Notice of Dispute by U.S. Mail to Microsoft Corporation, ATTN: LCA ARBITRATION, One Microsoft Way, Redmond, WA 98052-6399. A form is available at http://go.microsoft.com/fwlink/?linkid=245499. Microsoft will send any Notice of Dispute to you by U.S. Mail to your address if we have it, or otherwise to your e-mail address. You and Microsoft will attempt to resolve any dispute through informal negotiation within 60 days from the date the Notice of Dispute is sent. After 60 days, you or Microsoft may commence arbitration.

(Dkt. No. 44-1 at 10.) Even after Ms. Guthrie sued in the Southern District of Texas, she argues it is Microsoft that should have sent her a "notice of dispute." This argument turns the agreement's language upside down. It is Ms. Guthrie, and not Microsoft, that has a "dispute" to resolve and who was required to outline the facts giving rise to the dispute and what relief she requested. And even if that were not the case, the Court can find no legal or equitable basis to enforce the procedural requirement where Plaintiff failed to follow it.

In her second line of attack, Ms. Guthrie argues Microsoft waived the arbitration provision by waiting more than a year to invoke it. (Dkt. No. 48 8.) For such a waiver to occur, there must be: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986). Plaintiff's carry a heavy burden to prove waiver of an arbitration provision. Day v. Microsoft, 2014 WL 243159, at *4 (W.D. Wash. January 22, 2014). Ms. Guthrie fails to carry this burden because Microsoft moved to compel arbitration promptly after the case was transferred to the proper forum. (See Dkt. No. 28, 43).

Finally, Ms. Guthrie attacks the enforceability of the agreement on the grounds it is unconscionable and/or illusory because "Microsoft is the party with the greater bargaining power and it has given itself the right to opt-out of the arbitration process whenever it sees fit." (Dkt. No. 48 at 13.) Microsoft is correct in arguing that under the terms of the TOUs it is the arbitrator and not this Court who resolves those issues. (Dkt. No. 53.) The TOUs incorporate the AAA Commercial Arbitration rules into their agreements, which the Ninth Circuit has held constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013). Delegation of arbitrability to the arbitrator includes the sort of enforceability arguments that Ms. Guthrie makes. See Madgrigal v. AT&T Wireless Servs., Inc., 2010 WL 5343299 (E.D. Cal. 2010). Ms. Guthrie delegated these issues to the arbitrator and as such, this is the improper forum.

## Conclusion

The Court GRANTS the motion. It finds Ms. Guthrie agreed to arbitrate her claims and those claims fall within the scope of the arbitration provision in the October 2012 TOUs. The

Court also finds the parties inclusion of the AAA into the TOUs clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. Ms. Guthrie's challenges to the enforceability of the agreement are to be decided by the arbitrator. The Court also STAYS the matter for a period of 6 months or until arbitration is complete, whichever comes first, so that Plaintiff can pursue her claims in arbitration. The parties are ORDERED to provide a status report to the Court regarding arbitration by February 20, 2015.

The clerk is ordered to provide copies of this order to all counsel.

Dated this <u>20th</u> day of August, 2014.

Marsha J. Pechman
Chief United States District Judge