1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10    DENNIS WALSH, et al.,                        CASE NO. C14-424 MJP

11                        Plaintiffs,              ORDER ON DEFENDANT'S
                                                   MOTION TO DISMISS
12           v.

13    MICROSOFT CORPORATION,

14                        Defendant.

15

16           THIS MATTER comes before the Court on Defendant's Motion to Dismiss Under Rules

17    12(b)(1) and 12(b)(6).  (Dkt. No. 51.)  Having reviewed the Parties' briefing and all related

18    papers, the Court GRANTS in part and DENIES in part Defendant's motion.

19                                       **Background**

20           This motion is part of a putative class action by subscribers of Microsoft's X-Box LIVE

21    streaming media service alleging Microsoft deceptively made unauthorized charges to their

22    credit cards in connection with their streaming media subscriptions.  (Dkt. No. 11.)  The case

23    was transferred to this Court from the District Court for the Southern District of Texas

24    (Brownsville Division) pursuant to Defendant's Motion to Transfer Venue under 28 U.S.C.

1    § 1404(a) to enforce a forum-selection clause contained in X-Box LIVE's "clickwrap" contract,

2    or Terms of Use.  (Dkt. No. 15.)  Judge Saldaña found that the Terms of Use constituted a valid,

3    governing contract between the parties, and that the forum-selection clause should be enforced.

4    (Dkt. No. 28.)

5        Plaintiffs reside in five different states, and allege violations of the federal Computer

6    Fraud and Abuse Act and Magnuson-Moss Warranty Act in addition to violations of state laws.

7    The Terms of Use specify that the laws of a subscriber's home state govern any dispute between

8    the subscriber and Microsoft.  Consequently, Plaintiffs plan state-specific subclasses, composed

9    of consumers who reside in that state, which would bring actions under the applicable state laws

10   in addition to the federal claims, which apply nationwide.

11                                         **Discussion**

12       I.        Legal Standards

13       A complaint must be dismissed under Fed.R.Civ.P. 12(b)(1) if, considering the factual

14   allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the

15   Constitution, laws, or treaties of the United States, or does not fall within one of the other

16   enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or

17   controversy within the meaning of the Constitution; or (3) is not one described by any

18   jurisdictional statute.  Baker v. Carr, 369 U.S. 186, 198 (1962); D.G. Rung Indus., Inc. v.

19   Tinnerman, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986).

20       Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

21   claim upon which relief can be granted."  In ruling on a motion to dismiss, the Court must

22   construe the complaint in the light most favorable to the non-moving party.  Livid Holdings Ltd.

23   v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 2

1    well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of

2    the plaintiff. <u>Wyler Summit P'ship v. Turner Broad. Sys.</u>, 135 F.3d 658, 661 (9th Cir. 1998).

3         Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to

4    relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A

5    claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

6    draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Aschcroft</u>

7    <u>v. Iqbal</u>, 556 U.S. 662, 678 (2009).  As a result, a complaint must contain "more than labels and

8    conclusions, and a formulaic recitation of the elements of a cause of action will not do."

9    <u>Twombly</u>, 550 U.S. at 555.

10      II.       Fed. R. Civ. P. 12(b)(1): No Jurisdiction Because Plaintiffs Lack Standing

11         Microsoft argues that Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P.

12    12(b)(1) because Plaintiffs lack standing.  Specifically, Microsoft contends that Plaintiffs Ortega,

13    Ortiz, and Sweeney-Fagan never subscribed to X-Box LIVE and therefore lack standing to bring

14    suit over a service they never purchased.  (Dkt. No. 51 at 5.)  Additionally, Microsoft argues that

15    all Plaintiffs except Walsh lack Article III standing because they have not alleged a

16    particularized injury and thus do not allege injury-in-fact.  (Dkt. No. 51 at 6.)  The Court

17    GRANTS the motion as to Plaintiffs Ortiz and Sweeney-Fagan and DENIES the motion as to

18    Plaintiffs Ortega and Sweeney.

19        A.       No X-Box LIVE account

20         Microsoft contends Plaintiffs Ortiz, Ortega, and Sweeney-Fagan never had X-Box LIVE

21    accounts, and thus lack standing to sue over a product they never purchased.

22         To establish standing, Plaintiffs must show they have actually been injured by

23    Defendant's alleged conduct.  <u>Lee v. Am. Nat. Ins. Co.</u>, 260 F.3d 997, 1001 (9th Cir. 2001).

24

1    Plaintiffs lack standing to pursue claims based on products they did not purchase because they

2    have not suffered an injury.  Id.  When considering a Fed. R. Civ. P. 12(b)(1) motion to dismiss,

3    the Court is not restricted to the face of the pleadings, but may review any evidence to resolve

4    factual disputes concerning the existence of jurisdiction.  McCarthy v. United States, 850 F.2d

5    558, 560 (9th Cir. 1988).  A Fed. R. Civ. P. 12(b)(1) motion can attack the substance of a

6    complaint's jurisdictional allegations despite their formal sufficiency, and in so doing, may rely

7    on affidavits or any other evidence properly before the court.  St. Clair v. City of Chico, 880 F.2d

8    199, 201 (9th Cir.1989).

9         In support of its contentions, Microsoft submitted a declaration from Jason Coon, senior

10   enforcement program manager, who searched for but did not find records of Plaintiffs' accounts.

11   (Dkt. No. 52.)  Plaintiffs urge the Court not to consider the declaration of Mr. Coon because

12   external evidence is not properly considered at the motion to dismiss stage.  (Dkt. No. 54 at 13.)

13   This is incorrect.  See McCarthy, 850 F.2d at 560.

14        Plaintiffs also dispute the validity of Mr. Coon's declaration, arguing it does not meet the

15   requirements of FRE 803(6), the rule for admitting records of a regularly conducted activity.

16   Specifically, Plaintiffs contend that Mr. Coon is not a "custodian of records," was not subject to

17   cross-examination, and did not provide details on when the records were made. (Dkt. No. 54 at

18   13.)

19        "A witness does not have to be the custodian of documents offered into evidence to

20   establish Rule 803(6)'s foundational requirements. The phrase 'other qualified witness' is broadly

21   interpreted to require only that the witness understand the record-keeping system." United States

22   v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993) (citations omitted).  Mr. Coon submitted a sworn

23

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 4

1   declaration stating that he understands the record-keeping system and performed a diligent

2   search of Microsoft's records.  Mr. Coon satisfies this requirement of FRE 803(6).

3        Plaintiffs also argue that because Mr. Coon was not subject to cross-examination, the

4   reliability of the record search must be called into question.  (Dkt. No. 54 at 13.)  Defendant

5   responds by arguing that courts have admitted evidence under the business records rule despite

6   some records being missing or unavailable.  (Dkt. No. 56 at 2.)

7        Plaintiffs bear the burden of establishing jurisdiction, commensurate with the level of

8   proof required at each stage of the proceeding.  Lujan v. Defenders of Wildlife, 504 U.S. 555,

9   561 (1992).  While the probative value of Mr. Coon's declaration may be attacked, Plaintiffs

10  Ortiz and Sweeney-Fagan have submitted no evidence of their own to contravene Microsoft's

11  evidence.  Plaintiff Ortega has provided the Court with a sworn declaration that he subscribed to

12  X-Box LIVE under the handle "Sebian09" in related case Mendoza v. Microsoft, Case No. 2:14-

13  cv-316-MJP, Dkt. No. 54-8 at 2 (W.D. Wash. 2014).  At this early stage, a sworn declaration that

14  he had an account is sufficient to survive dismissal, and dismissal as to Plaintiff Ortega is

15  DENIED.

16       Because Plaintiffs Sweeney-Fagan and Ortiz have submitted no evidence to support the

17  allegations in their Complaint and establish standing, the Court GRANTS the motion as to

18  Plaintiffs Sweeney-Fagan and Ortiz.

19       B.      Injury in fact

20       Microsoft argues that all Plaintiffs except Walsh have not alleged a particularized injury

21  and thus do not allege injury in fact, and consequently lack Article III standing.  (Dkt. No. 51 at

22  6.)

23

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 5

1    Article III standing requires Plaintiffs to have suffered an "injury in fact," or an injury

2  which is (a) concrete and particularized, and (b) actual or imminent.  Lujan, 504 U.S. at 560.  "At

3  the pleading stage, general factual allegations of injury resulting from the defendant's conduct

4  may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those

5  specific facts that are necessary to support the claim."  Id.  (citation and internal quotation marks

6  omitted).

7    Microsoft contends that Plaintiffs have not alleged injury in fact because the Complaint

8  attempts to incorporate the facts alleged as to Plaintiff Walsh and attribute them to all Plaintiffs.

9  The Amended Complaint, ¶¶ 19-21, alleges Walsh's injury.  It then states that "[a] similar

10 situation occurred to the following named Plaintiffs" and lists the names and domiciles of the

11 other Plaintiffs.  (Dkt. No. 11 at ¶22.)   In other words, instead of alleging that each Plaintiff was

12 incorrectly billed by Microsoft, denied a refund, and charged additional fees after cancelation,

13 the Complaint attempts to incorporate these facts by reference.

14    The Court presumes that general allegations embrace those specific facts necessary to

15 support a claim.  By pleading that a similar situation happened to each Plaintiff, Plaintiffs plead a

16 general allegation of injury.  At the motion to dismiss stage, drawing inferences in favor of the

17 nonmoving party, the Court finds the Complaint sufficient to allege by incorporation

18 particularized injury to each Plaintiff, and DENIES the motion as to the remaining Plaintiffs,

19 Ortega and Sweeney.

20    III.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

21    Microsoft asks the Court to dismiss Plaintiffs' Amended Complaint for failure to state a

22 claim upon which relief can be granted.

23        A.    Claims time-barred by Terms of Use's one-year limitation period

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 6

1    Microsoft argues that Plaintiff Ortega's claims are time-barred by the one-year limitation

2    on bringing suit imposed by the Terms of Use.  The Terms of Use give subscribers one year to

3    bring any claim related to the X-Box LIVE contract or service, "unless your local law requires a

4    longer time to file claims."  (Dkt. No. 51 at 7.)  Plaintiffs argue this clause gives subscribers one

5    year to file a claim unless an applicable statute has a longer statute of limitations, in which case

6    the statute of limitations controls.  (Dkt. No. 54 at 22.)  Defendant argues the Terms of Use are a

7    contract through which subscribers have agreed to shorten any statute of limitations to one year,

8    unless the law of that subscriber's state forbids the contractual shortening of statutes of

9    limitations.  (Dkt. No. 56 at 5.)  Defendant contends that adopting Plaintiffs' interpretation would

10   render the provision meaningless, a result courts should seek to avoid.  (Id.)

11    California, Plaintiff Ortega's home state, recognizes contractual shortening of statutes of

12   limitations as long the limitation period is substantively reasonable.  Janda v. T-Mobile USA,

13   Inc., 378 F. App'x 705, 709 (9th Cir. 2010) (holding that one-year period is substantively

14   reasonable); see also Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1044–45 (9th Cir. 2001)

15   ("[e]ven if a contract is one of adhesion, a provision shortening the applicable statute of

16   limitations is enforceable so long as the limitations period is substantively reasonable") (holding

17   that six-month period was reasonable).

18    The Complaint identifies 2011 as the year in which Microsoft's alleged conduct occurred,

19   and this suit was filed in January of 2013.  The Terms of Use constitute a valid governing

20   contract between the Parties, and the contract shortens the applicable statues of limitations.

21   Defendant's motion to dismiss Ortega's claims as time-barred is GRANTED.

22    Microsoft originally contended the one-year limitation period applied to all Plaintiffs,

23   (Dkt. No. 51 at 7), but has withdrawn its argument as to Walsh and Sweeney because the laws of

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 7

1   Texas and Florida do not permit this particular contractual shortening of statutes of limitations.

2   (Dkt. No. 56 at 7.)

3        B.      Claims not responded to by Plaintiffs

4        Microsoft asks the Court to dismiss several causes of action as conceded by Plaintiffs

5   under LCR 7(b) because they are not explicitly responded to in Plaintiffs' Response to the

6   Motion to Dismiss: breach of implied warranty, unjust enrichment, negligence, common law

7   fraud, violations of California's Automatic Renewal Charges law, and violations of California's

8   Unfair Competition Law's unfair and unlawful prongs.  (Dkt. No. 56 at 7.)

9        As discussed above, Plaintiff Ortega's claims are dismissed as time-barred, and

10  because he is the only California plaintiff and subscribers must sue under the laws of their home

11  states, all California law claims must be dismissed.  Plaintiffs make passing references to other

12  claims sufficient to demonstrate that while they did not respond point by point to Defendant's

13  motion, they have not failed to file papers in opposition and they have not neglected to prosecute

14  their suit.  The request to dismiss these causes of action as conceded is DENIED.

15       C.      Computer Fraud and Abuse Act Claim

16       Microsoft argues Plaintiffs have not alleged facts sufficient to satisfy the Computer Fraud

17  and Abuse Act ("CFAA")'s unauthorized access requirement or damages requirement.  It

18  contends that Plaintiffs allege only unauthorized use of their credit card information, but not

19  unauthorized access, and only the later is covered by CFAA.  (Dkt. No. 51 at 8.)  Microsoft also

20  argues that Plaintiffs have not alleged facts sufficient to demonstrate that a $5,000 loss has

21  actually occurred.  (Dkt. No. 51 at 9.)

22       Civil actions under CFAA require plaintiffs to allege facts plausibly establishing a loss of

23  at least $5,000, in the aggregate, over a one-year period.  18 U.S.C. § 1030(c)(4)(A)(i)(I).

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 8

1   Plaintiffs must meet the damages requirement themselves, and cannot rely on absent members of

2   their putative class.  See Warth v. Seldin, 422 U.S. 490, 501 (1975).

3           Plaintiffs allege that Walsh was billed $74 in unauthorized charges, and that a

4   "similar situation" occurred with respect to the other remaining Plaintiff, Sweeney.  (Dkt. No. 11

5   at 7.)  In their Response to Defendant's Motion to Dismiss, Plaintiffs state cursorily that "[i]n the

6   instant case the aggregate claims will easily exceed $5,000.00…" but provide no information on

7   how calculations can be made that result in more than $5,000 in damages.  (Dkt. No. 54 at 27.)

8   Plaintiffs have not plausibly pleaded damages that exceed $5,000 when considered in the

9   aggregate over a one-year period.  Defendant's motion to dismiss the CFAA claim is

10  GRANTED.

11          D.      Fed. R. Civ. P. 9(b) and fraud under Texas common law

12          Microsoft argues Plaintiffs have not pleaded fraud with the particularity necessary to

13  satisfy Fed. R. Civ. P. 9(b).

14          Fed. R. Civ. P. 9(b) requires Plaintiffs to allege fraud with particularity.  "Put simply,

15  Rule 9(b) requires 'the who, what, when, where and how' to be laid out."  Shandong Yinguang

16  Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) (citation omitted).

17  The heightened pleading standard serves several purposes, including placing defendants on

18  notice and enabling them to prepare a meaningful response, safeguarding defendants from

19  frivolous charges which might damage their reputations, and precluding the use of groundless

20  fraud claims as a pretext to discovering wrongs.  See, e.g., In re Lupron Mktg. & Sales Practices

21  Litig., 295 F. Supp. 2d 148, 170 (D. Mass. 2003).

22          The elements of fraud under Texas common law are: (1) that a material representation

23  was made; (2) the representation was false; (3) when the representation was made, the speaker

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 9

1    knew it was false or made it recklessly without any knowledge of the truth and as a positive

2    assertion; (4) the speaker made the representation with the intent that the other party should act

3    upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered

4    injury. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001).

5           Plaintiff Walsh pleads that "Microsoft committed common law fraud in Texas by

6    charging subscribers' credit card without customer authorization.  These subscribers were then

7    billed for purchases they did not make.  These subscribers suffered injury in the form of

8    monetary losses as they paid for these unauthorized purchases."  (Dkt. No. 11, ¶62.)  Plaintiff

9    also alleges the X-Box LIVE system was defective because it allowed for unauthorized charges,

10   that Microsoft knowingly marketed and sold the defective system while representing that it was

11   not defective, and that Plaintiff relied on that assertion and was therefore injured.  (Dkt. No. 11,

12   ¶ 61.)

13          While Plaintiff Walsh does not plead with the most specificity possible, he pleads the

14   circumstances constituting fraud with sufficient particularity to satisfy Fed. R. Civ. P. 9(b) and

15   its notice goals.  Microsoft is on notice of who, what, where, when and how.  Plaintiff's

16   allegations speak to each element of the fraud cause of action: (1) Microsoft materially

17   misrepresented it would not make additional unauthorized charges to subscribers' credit cards,

18   (2) Microsoft made unauthorized charges, (3) Microsoft knew that its system would make

19   unauthorized charges when it was selling its X-Box LIVE system, and (4) intended for

20   consumers to purchase the system based on their understanding that no unauthorized charges

21   would be made.  (5) Consumers relied on Microsoft's representations, and (6) were financially

22   harmed by the unauthorized billing that resulted.  Plaintiff has pleaded with sufficient

23

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 10

1  particularity to survive a motion to dismiss at this stage in the case, and Defendant's motion to

2  dismiss Walsh's fraud claim is DENIED.

3          E.      Texas's Deceptive Trade Practices Act

4          Microsoft argues that because courts apply Fed. R. Civ. P. 9(b)'s pleading standard to

5  fraud-based claims under Texas's Deceptive Trade Practices Act ("DTPA"), the DTPA claim

6  should be dismissed for failure to allege fraud with sufficient particularity.  (Dkt. No. 51 at 11.)

7  Microsoft then argues that Plaintiff fails to state a DTPA claim for several other reasons,

8  contending that X-Box LIVE is not a 'service' covered by the statute, that a claim would be

9  barred by the economic loss doctrine, and that Plaintiff has not alleged the requisite reliance.

10 (Dkt. No. 51 at 12-18.)

11          i.      Fed. R. Civ. P. 9(b) and DTPA claim

12         The elements of a DTPA claim are (1) the plaintiff is a consumer; (2) the defendant

13 committed a false, misleading, or deceptive act; and (3) the act caused the consumer's damages.

14 Kersh v. UnitedHealthcare Ins. Co., 946 F. Supp. 2d 621, 643 (W.D. Tex. 2013); Tex. Bus. &

15 Com. Code Ann. §§ 17.45(4), 17.50(a) (West 2013); see also Brown & Brown of Tex., Inc. v.

16 Omni Metals, Inc., 317 S.W.3d 361, 387 (Tex. App. 2010) ("Under the DTPA, a consumer may

17 bring an action when he has relied to his detriment on a false or misleading representation, and

18 the reliance is a producing cause of damages.").

19         Plaintiff Walsh alleges that he (1) is a consumer who purchased a subscription to the X-

20 Box LIVE entertainment service, (2) that Microsoft intentionally made unauthorized charges to

21 his credit card, contravening representations it made to him about when and why it would charge

22 his credit card, and (3) the unauthorized charging of his credit card caused him harm.  Plaintiff

23

24

1  Walsh pleads with sufficient particularity to state a fraud-based claim under DTPA.  Dismissal

2  for inadequate pleading is DENIED.

3                              ii.        Standing under DTPA

4         Defendant asserts that Plaintiff Walsh lacks standing under DTPA because X-Box LIVE

5  is not a "good" or a "service" within the meaning of the statute, and thus Plaintiff lacks

6  'consumer' status.  (Dkt. No. 51 at 13.)

7         A plaintiff must qualify as a 'consumer' in order to have standing to bring an action

8  under DTPA, and consumer status is determined by whether plaintiffs seek or acquire, by

9  purchase or lease, any goods or services.  <u>Marketic v. U.S. Bank Nat. Ass'n</u>, 436 F. Supp. 2d

10  842, 854-55 (N.D. Tex. 2006).  Whether a plaintiff has consumer status under DTPA is a

11  question of law.  <u>Id.</u> at 854.

12         Defendant argues Plaintiff's allegations of misconduct go to X-Box LIVE's <u>billing</u>

13  services, but not to its entertainment services.  (Dkt. No. 51 at 14.)  Services fall under DTPA

14  only when they are "an objective of the transaction, not merely incidental to it."  <u>Everson v.</u>

15  <u>Mineola Cmty. Bank, S.S.B.</u>, 2006 WL 2106959 (Tex. App. July 31, 2006).  Microsoft argues

16  that billing practices are merely incidental to the object of its transaction with Plaintiff, which

17  was for the X-Box LIVE <u>entertainment</u> service, and merely incidental billing practices are not

18  covered by DTPA.  (Dkt. No. 51 at 14) (citing the discussion in <u>Hand v. Dean Witter Reynolds</u>

19  <u>Inc.</u>, 889 S.W.2d 483, 500 (Tex. App. 1994)).

20         This argument is unavailing.  This case is about the X-Box LIVE service and whether the

21  service deceptively bills subscribers without permission.  In other words, the case is about

22  whether or not Microsoft, through a service arrangement made with subscribers, is charging

23  more than the amount subscribers consent to.  A dispute over the propriety of charges made by

24

1    an on-demand entertainment system as subscribers use it is not incidental to the X-Box service; it

2    is a fundamental component of the service. Dismissal on the basis of standing is DENIED.

3                              iii.    Economic loss doctrine

4           Microsoft asserts Plaintiff Walsh's DTPA claim is barred by the economic loss doctrine,

5    which is designed to maintain a distinction between damage remedies for breach of contract and

6    for tort, and provides that certain economic losses are properly remediable only in contract.

7    (Dkt. No. 51 at 18.) Microsoft cites Robinson v. Match.com, L.L.C., 2012 WL 3263992 (N.D.

8    Tex. Aug. 10, 2012) for the proposition that "[a]n allegation of a mere breach of contract,

9    without more, does not constitute a 'false, misleading or deceptive act' in violation of the

10   DTPA," and argues that Walsh's allegations amount to nothing more than a routine billing

11   dispute arising from and grounded in X-Box LIVE's Terms of Use. Robinson, 2012 WL

12   3263992 at *15 (citations omitted).

13          Microsoft attempts to mischaracterize Plaintiff's allegations. Plaintiff Walsh does not

14   allege that the X-Box LIVE service is worth less than what he paid for it, or that Microsoft

15   breached the contract by not performing. He does not allege that his economic harm is limited to

16   the value of his subscription, which he wants returned to him. He alleges that Microsoft created

17   a deceptive billing scheme that makes unauthorized charges to subscribers' credit cards and then

18   refuses to refund them, both during and after the subscription period. Though Plaintiff inartfully

19   styles the DTPA claim as one of a defect in or nondisclosure about "the gaming system," it is

20   clear from the Complaint that Plaintiff is referencing X-Box LIVE's unauthorized billing

21   capacity, which Microsoft knew about. The economic loss doctrine does not apply to the type of

22   harm alleged here. Dismissal on economic loss doctrine grounds is DENIED.

23

24

1                                 iv.       Reliance

2          Microsoft asserts that Plaintiff Walsh's DTPA claim should be dismissed because

3 Plaintiff has not alleged the requisite reliance on any allegedly deceptive or misleading

4 statements.  (Dkt. No. 51 at 15.)

5          Again, while the Complaint could have been drafted more masterfully, it is clear from

6 reading the Complaint that Plaintiff alleges that he relied on Microsoft's representations about its

7 billing practices, none of which state that Microsoft may make unauthorized charges during or

8 after the subscription term.  Dismissal for failure to allege reliance is DENIED.

9          In sum, Plaintiff Walsh successfully pleads a DTPA claim.  Defendant's motion to

10 dismiss the DTPA claim is DENIED.

11                      F.       Implied warranties under state law and Magnuson-Moss Warranty Act

12          Microsoft seeks dismissal of Plaintiffs' warranty claims because Microsoft expressly

13 disclaimed these warranties, and because the warranties do not apply to services such as X-Box

14 LIVE.  (Dkt. No. 51 at 21.)  Plaintiffs respond only by cursorily stating that X-Box LIVE is a

15 service covered by implied warranties arising under state law, and that as a consumer service it is

16 also covered by Magnuson-Moss.  (Dkt. No. 54 at 30.)

17          Under Texas law, which governs Plaintiff Walsh's claims, defendants may assert the

18 defense of disclaimer to implied warranties of merchantability and fitness for a particular

19 purpose as long as the disclaimer is conspicuous and includes the word "merchantability."  See

20 e.g., Omni USA, Inc. v. Parker-Hannifin Corp., 964 F. Supp. 2d 805 (S.D. Tex. 2013).

21          Under Florida law, which governs Plaintiff Sweeney's claims, a seller may exclude

22 implied warranties by an express and conspicuous provision.  See e.g., JDI Holdings, LLC v. Jet

23 Mgmt., Inc., 732 F. Supp. 2d 1205 (N.D. Fla. 2010).

24

1    The Terms of Use contain express provisions disclaiming the implied warranties of

2 merchantability and fitness for a particular purpose.  (Dkt. No. 51 at 21.)  Plaintiffs have not

3 pleaded that the warranty disclaimers contained in the Terms of Use were inconspicuous or

4 unclear in any way.  Therefore, Plaintiffs have failed to state a plausible claim for breach of

5 implied warranty, and dismissal as to these claims is GRANTED.

6    "[The] disposition of the state law warranty claims determines the disposition of the

7 Magnuson-Moss Act claims.  Coe v. Phillips Oral Healthcare, Inc., 2014 WL 722501, *9 (W.D.

8 Wash. Feb. 24, 2014) (quoting Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir.

9 2008)).  Magnuson-Moss "does not provide an independent basis for liability, but instead

10 provides a federal cause of action for state law express and implied warranty claims." Taliaferro

11 v. Samsung Telecomm. Am., LLC, 2012 WL 169704, *10 (N.D. Tex. Jan. 19, 2012).  Because

12 Plaintiffs lack a valid state-law warranty claim, their Magnuson-Moss claim "is not viable." Coe,

13 2014 WL 722501, at *9.  Dismissal of the Magnuson-Moss claim is GRANTED.

14        G.    Negligence

15    Microsoft argues that Plaintiffs' negligence claim is barred by the economic loss

16 doctrine.  (Dkt. No. 51 at 11.)  Microsoft cites Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617

17 (Tex. 1986), for the principle that "when the injury is only the economic loss to the subject of a

18 contract itself, the action sounds in contract alone." Jim Walter Homes, 711 S.W.2d at 618.

19 "Tort damages are recoverable, however, if the defendants' conduct "would give rise to liability

20 independent of the fact that a contract exists between the parties."" Henderson v. Wells Fargo

21 Bank, N.A., 974 F. Supp. 2d 993, 1011 (N.D. Tex. 2013) (citation omitted).

22    As with the DTPA economic loss doctrine defense, Microsoft's argument here is

23 unpersuasive.  Plaintiffs do not allege that the X-Box LIVE service is worth less than what they

24

1   paid for it, or that Microsoft breached the contract.  They do not allege that their economic harm

2   is limited to the value of their subscription, which they want returned to them.  Plaintiffs allege

3   that Microsoft ran a deceptive billing scheme, making unauthorized charges to subscribers'

4   credit cards and then refusing to refund them, both during and after the subscription period.

5   Though Plaintiffs inartfully style the negligence claim as one of a defect in or nondisclosure

6   about "the gaming system," it is clear from the Complaint that Plaintiffs are referencing X-Box

7   LIVE's unauthorized billing capacity, which Microsoft knew or should have known about.  The

8   economic loss doctrine does not apply to the type of harm alleged here, and dismissal of the

9   negligence claim is DENIED.

10          H.      Unjust enrichment

11          Microsoft argues that Texas does not recognize unjust enrichment as an independent

12   cause of action, (Dkt. No. 51 at 23), and that Florida does not recognize any unjust enrichment

13   claims where a valid contract exists.  (Dkt. No. 51 at 23.)

14          Texas does not recognize unjust enrichment as a cause of action; rather, "unjust

15   enrichment is a theory of liability that a plaintiff can pursue through several equitable causes of

16   action, including money had and received, but not as a separate and distinct claim." Hancock v.

17   Chicago Title Ins. Co., 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009).  Because Texas does not

18   recognize unjust enrichment as an independent cause of action, dismissal of Walsh's unjust

19   enrichment claim is GRANTED.

20          Florida will not recognize a claim for unjust enrichment where an express contract exists

21   between the parties.  Alvarez v. Royal Caribbean Cruises, Ltd., 905 F. Supp. 2d 1334, 1341 (S.D.

22   Fla. 2012).  Plaintiffs allege they subscribed to X-Box LIVE, (Dkt. No. 11 at 7, ¶¶19-22), and do

23   not deny that all subscribers must agree to the Terms of Use, a contract of adhesion imposed by

24

Microsoft.  The validity of the Terms of Use was upheld by the District Court in Texas, which transferred venue to this Court based on a forum-selection clause contained within the Terms of Use.  (Dkt. No. 28.)  Because the Terms of Use are a contract between the parties, Plaintiff Sweeney has failed to state a claim for unjust enrichment under Florida law, and dismissal of this claim is GRANTED.

### I.       Money had and received

Microsoft argues that a money had and received action is only available where there is no contract between the parties that covers the subject matter of the dispute, and once again points to the Terms of Use as the governing contract.  (Dkt. No. 51 at 24.)  Plaintiffs respond that they allege a money had and received claim in the alternative, should the Court find that no contract existed between the parties.  (Dkt. No. 54 at 31.)

As discussed above, Plaintiffs allege they subscribed to X-Box LIVE, (Dkt. No. 11 at 7, ¶¶19-22), and do not deny that all subscribers must agree to the Terms of Use.  The validity of the Terms of Use was upheld by the District Court in Texas.  (Dkt. No. 28.)  Because the Terms of Use are an express contract between the parties, Plaintiffs have not plausibly pleaded a money had and received claim, and dismissal of this claim is GRANTED.

### IV.      Plaintiffs' Cross-motion to Strike

Plaintiffs ask the Court to strike Defendant's Motion to Dismiss for being filed late and being previously adjudicated by the District Court in Texas.  (Dkt. No. 54 at 12.)  Microsoft's previous Fed. R. Civ. P. 12(b)(3) motion was filed in Texas before venue was transferred and was "withdrawn without prejudice as moot." (Dkt. No. 14.)  The original filing was made before a circuit split, which left in doubt whether forum-selection clauses required dismissal or transfer, was resolved.  After the Supreme Court resolved the issue, In re Atl. Marine Constr. Co., 134 S.

1 | Ct. 568, 580 (2013), Microsoft withdrew the motion to dismiss, and withdrawal was granted

2 | without prejudice.  Plaintiffs' motion to strike is DENIED.

3 | **Conclusion**

4 |         Defendant's Motion to Dismiss is GRANTED in part and DENIED in part: (1) the claims

5 | of Plaintiffs Ortiz and Sweeney-Fagan are DISMISSED for lack of standing because there is no

6 | evidence of their X-Box LIVE accounts; (2) Plaintiff Ortega's claims are DISMISSED because

7 | California recognizes contractual shortening of statutes of limitations, and his claims are time-

8 | barred; (3) Plaintiffs' CFAA claims are DISMISSED because Plaintiffs have not plausibly

9 | pleaded that the value of their claims, in the aggregate over a one-year period, exceeds $5,000, as

10 | required by CFAA; (4) Plaintiffs' implied warranty and Magnuson-Moss claims are

11 | DISMISSED because Microsoft disclaimed these warranties; and (5) Plaintiffs' unjust

12 | enrichment and money had and received claims are DISMISSED.

13 |         Plaintiff Walsh has pleaded with sufficient particularity to maintain claims for fraud

14 | under Texas common law and for a violation of the Texas DTPA.  Plaintiffs Walsh and Sweeney

15 | have sufficiently pleaded a negligence claim under Texas and Florida law.  Dismissal of these

16 | claims is DENIED.

17 |

18 |         The clerk is ordered to provide copies of this order to all counsel.

19 |         Dated this 20th day of October, 2014.

20 |

21 |

22 | Marsha J. Pechman

23 | Chief United States District Judge

24 |